1  Shannon Bettis Nakabayashi (State Bar No. 215469)
   JACKSON LEWIS P.C.
2  50 California Street, 9th Floor
   San Francisco, CA 94111-4615
3  Telephone:    (415) 394-9400
   Facsimile:    (415) 394-9401
4  E-mail:       Shannon.Nakabayashi@jacksonlewis.com

5  Isabella L. Shin (State Bar No. 294937)
   JACKSON LEWIS P.C.
6  160 W. Santa Clara Street, Suite 400
   San Jose, CA 95113
7  Telephone:    (408) 579-0404
   Facsimile:    (408) 454-0290
8  E-mail:       Isabella.Shin@jacksonlewis.com

9  Attorneys for Defendants
   BOEHRINGER INGELHEIM FREMONT, INC.,
10 BOEHRINGER INGELHEIM
   PHARMACEUTICALS, INC., and
11 BOEHRINGER INGELHEIM ANIMAL HEALTH
   USA INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIN VALENCIA, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BOEHRINGER INGELHEIM FREMONT, INC., a Delaware corporation; BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation; BOEHRINGER INGELHEIM ANIMAL HEALTH USA INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. <br><br> **DEFENDANTS' NOTICE OF REMOVAL** <br><br> **[28 U.S.C. §§ 1332, 1441, 1446, 1453]** <br><br> (Filed concurrently with Civil Case Cover Sheet, Declaration of Jane Jordan, Notice of Interested Parties, and Corporate Disclosure Statement) <br><br> State Court Case No. 25CV121239 <br> State Action filed: April 30, 2025 |

TO THE HONORABLE CLERK OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF DARIN VALENCIA, AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants BOEHRINGER INGELHEIM FREMONT, INC., BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., and BOEHRINGER INGELHEIM ANIMAL HEALTH USA INC. (collectively, "Defendants"), remove the above-entitled action to this Court from the Superior Court of the State of California, County of Alameda pursuant to 28 U.S.C. § 1441. Defendants invoke this Court's original jurisdiction under 28 U.S.C. § 1332(d) (the Class Action Fairness Act) ("CAFA"). Defendants submit this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff DARIN VALENCIA ("Plaintiff") against Defendants and without conceding that Plaintiff has pleaded any claims upon which relief can be granted. This removal is based on the following grounds:

**I.    PROCEDURAL BACKGROUND.**

1.    On April 30, 2025, Plaintiff filed a class action complaint in the Superior Court of the State of California, County of Alameda, entitled *Darin Valencia v. Boehringer Ingelheim Fremont, Inc, et al.,* Case No. 25CV121239 (the "State Court Complaint"). (Declaration of Jane Jordan in Support of Defendants' Notice of Removal ("Jordan Decl.") ¶ 3.)

2.    On May 30, 2025, Plaintiff served copies of the State Court Complaint, the Summons, Civil Cover Sheet, Civil Case Cover Sheet Addendum, Notice of Case Management Conference, Alternative Dispute Resolution Information Packet, and Stipulation to Attend Alternative Dispute Resolution and Delay Initial Case Management Conference for 90 Days on Defendants. (*Id.*) True and correct copies of the State Court Complaint, the Summons, Civil Cover Sheet, Civil Case Cover Sheet Addendum, Notice of Case Management Conference, Alternative Dispute Resolution Information Packet, and Stipulation to Attend Alternative Dispute Resolution and Delay Initial Case Management Conference for 90 Days that were served on Defendants are attached as **Exhibit A, B, and C** to Jordan Decl.

3.    On June 27, 2025, Defendants filed an Answer to Plaintiff's Complaint in the Superior Court of the State of California, County of Alameda. (*Id.*) A true and correct copy of

Defendants' Answer is attached to Jordan Decl. as **Exhibit D**.

4. **Exhibits A and D** constitute all the pleadings that have been served in this action as of the date of the filing of this Notice of Removal.

## II.    REMOVAL IS TIMELY.

5. Plaintiff served Defendants with the Complaint on May 30, 2025, and thus, the present Notice of Removal is timely under 28 U.S.C. §§ 1446(b) and 1453. *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999). No previous Notice of Removal has been filed or made with this Court.

## III.    NOTICE.

6. Defendants will promptly serve this Notice of Removal on all parties and promptly file a copy of this Notice of Removal with the Clerk of the Superior Court, County of Alameda, as required by 28 U.S.C. § 1446(d).

## IV.    PLAINTIFF'S ALLEGATIONS.

7. Plaintiff alleges that "Plaintiff is a California resident that worked for Defendants in the County of Alameda, State of California, as an hourly, non-exempt Master Associate from approximately February 2019 to approximately November 2024." (*See* Exh. A (Complaint) ¶ 7.)

8. Plaintiff's Complaint alleges a putative class of "[a]ll persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice of class certification to the Class is sent." (*Id*. at ¶ 25.) Therefore, the relevant class period is from April 30, 2021 through the present (the "Class Period").

9. Plaintiff alleges eight claims on behalf of himself and the putative class members: (1) failure to pay minimum wages (*Id.* at ¶¶ 4, 32-41) (2) failure to pay overtime compensation (*Id.* at ¶¶ 4, 42-50); (3) failure to provide required meal periods (*Id.* at ¶¶ 4, 51-54); (4) failure to provide required rest periods (*Id.* at ¶¶ 4, 55-58); (5) failure to reimburse employees for required expenses (*Id.* at ¶¶ 4, 59-62); (6) failure to pay wages upon termination (*Id.* at ¶¶ 4, 63-69); (7) failure to provide accurate itemized statements (*Id.* at ¶¶ 4, 70-77); and (8) unlawful business practices (*Id.* at ¶¶ 78-96).

## V. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA.

10. Plaintiff brings this action as a putative class action.[1] Removal under the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 because (1) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5,000,000, exclusive of interest and costs; (2) the aggregate number of putative class members in all proposed classes is 100 or greater; and (3) diversity of citizenship exists between at least one putative class member and the named Defendants in this matter. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1089–90, 1090 n.2 (9th Cir. 2010) (hereinafter *United Steel*) (finding that putative class actions satisfying the class action definition and numerosity requirement of § 1332(d)(5)(B) may be removed to federal court under § 1446). Although Defendants deny Plaintiff's factual allegations and deny that Plaintiff or the class that he purports to represent are entitled to the relief requested, all requirements for jurisdiction under CAFA have been met in this case.

### A. The Putative Class Has More Than 100 Members.

11. To remove under CAFA, the aggregate number of putative class members in all proposed classes must be greater than one hundred. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B); *United Steel*, *supra* 602 F.3d at 1090, 1090 n.2. Plaintiff's employer, Defendant Boehringer Ingelheim Fremont, Inc., employed six hundred and thirty-seven (637) current and former non-exempt employees April 30, 2021, and May 21, 2025. (Jordan Decl., ¶ 8.)

### B. Diversity Of Citizenship Exists.

12. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists—that is, one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(a) (under CAFA's minimal diversity requirements, diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any

---

[1] Defendants deny and reserve the right to contest at the appropriate time, that this action can properly proceed as a class action.

1  defendant"); *United Steel*, *supra* 602 F.3d at 1090–91 (holding that to achieve its purposes, CAFA
2  provides expanded original diversity jurisdiction for class actions meeting the minimal diversity
3  requirement set forth in 28 U.S.C. § 1332(d)(2)).

4  13.  "An individual is a citizen of the state in which he is domiciled; domicile is
5  determined by an individua's 1) residence in a state, and 2) his intent to remain indefinitely." *Boon*
6  *v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert*
7  *Co.*, 265 F.3d 853, 857 (9th Cir. 2001)); *see also Garza v. Brinderson Constructors, Inc.*, 178 F.
8  Supp. 3d 906, 913 (N.D.Cal. 2016). For purposes of diversity of citizenship jurisdiction, citizenship
9  is determined by the individual's domicile at the time that the lawsuit is filed. *Lew v. Moss*, 797
10 F.2d 747, 750 (9th Cir. 1986)). "Place of employment is another factor relevant to domicile[.]"
11 *Garza v. Brinderson Constructors, Inc.*, *supra* 178 F. Supp. 3d at 914. The Complaint alleges that
12 Plaintiff is a resident of California, thus, at least one putative class member is a citizen of California
13 for diversity jurisdiction purposes. (Exh. A (Complaint) at ¶ 15.)

14 14.  Under CAFA, a "corporation is a citizen of (1) the state under whose laws it is
15 organized or incorporated; and (2) the state of its 'principal place of business'" for diversity
16 purposes. *David v. HSBC Bank Nevada, N.A.*,557 F.3d 1026, 1028 (9th Cir. 2009) (citing U.S.C.
17 1332(c)(1)). Under the "nerve center" test, the principal place of business is the state where the
18 "officers direct, control, and coordinate" the corporation's activities and where the corporation
19 maintains its headquarters. *Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010) (hereinafter *Hertz*).
20 As the U.S. Supreme Court explained: "We conclude that "principal place of business" is best read
21 as referring to the place where a corporation's officers direct, control, and coordinate the
22 corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve
23 center." And in practice it should normally be the place where the corporation maintains its
24 headquarters — provided that the headquarters is the actual center of direction, control, and
25 coordination, i.e., the "nerve center[.]" *Hertz, supra* 559 U.S. at 92-93 (2010). A corporation can
26 only have one "nerve center." *Id*. at 93-94.  In evaluating where a corporation's "nerve center" is
27 located, courts will look to the center of overall direction, control, and coordination of the company
28 and will no longer weigh corporate functions, assets, or revenues in each state. *Id*.

15. Boehringer Ingelheim Fremont, Inc., is a Delaware Corporation and a wholly owned subsidiary of Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"). (Jordan Decl., ¶ 6.) BIPI is wholly owned and operated by Boehringer Ingelheim USA Corporation ("BI USA"). (*Id.*) BIPI and BI USA are corporations organized under the laws of the State of Delaware. Both are in headquartered in Connecticut, where their "nerve center," books, and records are kept, and their senior management are located. (*Id.*) Therefore, Boehringer Ingelheim Fremont, Inc., BIPI, and BI USA are citizens of both Delaware, the state of their incorporation, and Connecticut, where BIPI and BI USA's corporate headquarters and "nerve center" are located. (*Id.*).

16. Boehringer Ingelheim Animal Health USA, Inc., is a Delaware Corporation organized under the laws of the State of Delaware. Boehringer Ingelheim Animal Health USA, Inc. is headquartered in Georgia, where their "nerve center," books, and records are kept, and their senior management are located. (*Id.* at ¶ 7.) Therefore, Boehringer Ingelheim Animal Health USA, Inc. is a citizen of both Delaware, the state of its incorporation, and Georgia, where its corporate headquarters and "nerve center" are located. (*Id.*).

17. It is not necessary for DOES 1 through 10 to join in this removal as they have been sued under fictitious names, have not been served or received the Summons or the Complaint, and, under 28 U.S.C. § 1441(b)(1), are disregarded for purposes of removal and are not proper parties in this Court.

18. Accordingly, there is diversity jurisdiction under CAFA. To reiterate, *at least one member* of the putative class is a citizen of a state different from a defendant for the purpose of determining diversity. Here, Plaintiff is a citizen of California while all three Defendants are citizens from different states, including Delaware, Connecticut, and Georgia. 28 U.S.C. §§ 1332(d)(10). As a result, diversity jurisdiction exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

**C. The Amount in Controversy Exceeds $5,000,000.**

19. Pursuant to CAFA, the claims of the individual members in a putative class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest

and costs. 28 U.S.C. § 1332(d)(6). The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds that sum. 28 U.S.C. § 1332(d)(6); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Plaintiff may not avoid removal to federal court under CAFA's $5,000,000 amount in controversy requirement by expressly alleging or subsequently stipulating that damages fall below that sum. *See Standard Fire Ins. Co. v. Knowles*, *supra* 568 U.S. at 590. Defendants need only show that it is more likely than not that the amount in controversy exceeds $5,000,000. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) (hereinafter *Singer*). "Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract." *Fritsch, supra* 899 F.3d at 793; *see also Frias-Estrada v. Trek Retail Corp.*, 534 F. Supp. 3d 1058, 1061 (N.D. Cal. 2021) (hereinafter *Frias-Estrada*).

20. A removing party seeking to invoke CAFA jurisdiction "need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold" within the removing party's notice of removal. *See Dart Cherokee Basin Operating Company, LLC v. Owens*, 574 U.S. 81, 89 (2014) (hereinafter *Dart Cherokee*) (emphasis added); *Frias-Estrada, supra* 534 F. Supp. 3d at 1062. In the case of a dispute, a defendant's burden to establish the amount in controversy is the preponderance of the evidence standard. *See Dart Cherokee, supra* 574 U.S. at 89*; see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases). "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109–14, at 42 (2005) (citation omitted).

21. Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations. *Dart Cherokee, supra* 574 U.S. at 84; *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (affirming cases holding that a removing defendant's notice of removal need not contain evidentiary submissions); *Craig v. Universum Communs., Inc.*, 2020

U.S. Dist. LEXIS 144046, at *9 (N.D. Cal. Aug. 11, 2020) ("Defendant is not required to submit outside evidence[.]"). To put a finer point on it, a removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations." *Oda v. Gucci America, Inc.*, Case No. 2:14-cv-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *12 (C.D. Cal. Jan. 7, 2015); *Burgos v. Citibank, N.A.*, No. 23-cv-01907-AMO, 2023 U.S. Dist. LEXIS 151530, at *10 (N.D. Cal. Aug. 28, 2023). The ultimate inquiry is what amount is put "in controversy" by a plaintiff's complaint, not what a defendant will actually owe. *LaCross v. Knight Transport. Inc.*, 775 F.3d 1200, 1202 (explaining that courts are directed "to first look to the complaint in determining the amount in controversy") (citation omitted); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, Defendant "are not stipulating to damages suffered, but only estimating the damages in controversy"). A defendant's burden remains unchanged even if a plaintiff "affirmatively contend[s] in their complaint that damages do not exceed $5 million." *Ibarra v. Manheim Invs., Inc., supra* 775 F.3d at 1197.

22. However, as detailed below, Defendants have both plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 and the Court has jurisdiction pursuant to CAFA.

23. Although Defendants deny Plaintiff's factual allegations and deny that Plaintiff or the putative class he seeks to represent is entitled to any relief, Plaintiff's allegations have more likely than not put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[2]

24. Plaintiff alleges *eight* claims on behalf of himself and the putative class: (1) failure

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendants' references to potential damage amounts based on Plaintiff's allegations are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendants maintain that each of Plaintiff's claims is without merit and that Defendants are not liable to Plaintiff or any putative class member. In addition, Defendants deny that liability or damages can be established on a class wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendants'] liability." *Lewis v. Verizon Commcn's., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

to pay minimum wages (*Id.* at ¶¶ 4, 32-41); (2) failure to pay overtime compensation (*Id.* at ¶¶ 4, 42-50); (3) failure to provide required meal periods (*Id.* at ¶¶ 4, 51-54); (4) failure to provide required rest periods (*Id.* at ¶¶ 4, 55-58); (5) failure to reimburse employees for required expenses (*Id.* at ¶¶ 4, 59-62); (6) failure to pay wages upon termination (*Id.* at ¶¶ 4, 63-69); (7) failure to provide accurate itemized statements (*Id.* at ¶¶ 4, 70-77); and (8) unlawful business practices (*Id.* at ¶¶ 78-96).

25.     As discussed below, some of these causes of action carry with them the possibility of recovering damages and/or statutory penalties, thereby making it a virtual certainty that Plaintiff would recover over $5,000,000 in the event he succeeds at trial.

### 1. Meal and Rest Period Premium Claims

26.     According to Labor Code Section 226.7, no employer shall require any employee to work during any meal or rest period. Cal. Lab. Code § 226.7(a). If an employer fails to provide an employee a meal or rest period, the employer shall pay the employee an additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided. Cal. Lab. Code § 226.7(b).

27.     Plaintiff alleges that "[t]hroughout the statutory period, Defendants have wrongfully failed to provide Plaintiff and the Class with legally compliant meal periods. Defendants often required Plaintiff and the Class to work in excess of five consecutive hours a day without providing 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensating Plaintiff and the Class for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work. Defendants also did not adequately inform Plaintiff and the Class of their right to take a meal period by the end of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of work. Plaintiff and the Class were often required to work during their meal periods, leading to the failure to provide uninterrupted meal periods. For example, Plaintiff and the Class were required to prioritize urgent work tasks before starting their meal periods or during their meal periods, resulting in late, shortened, interrupted, or missed meal periods. These requirements also meant Plaintiff and the Class were not relieved of all duty during their meal periods. As a result, Plaintiff and the Class were not provided with

uninterrupted and complete meal periods. Accordingly, Defendants' policy and practice was to not provide meal periods to Plaintiff and the Class in compliance with California law." (Exh. A (Complaint) ¶ 18.)

28. In a similar vein, Plaintiff alleges "[t]hroughout the statutory period, Defendants have wrongfully failed to authorize and permit Plaintiff and the Class to take timely and duty-free rest periods. Defendants often required Plaintiff and the Class to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a net 10-minute, continuous and uninterrupted, rest period for every four hours of work (or major fraction thereof), or without compensating Plaintiff and the Class for rest periods that were not authorized or permitted. Defendants also did not adequately inform Plaintiff and the Class of their right to take a rest period. Moreover, Defendants did not have adequate policies or practices permitting or authorizing rest periods for Plaintiff and the Class, nor did Defendants have adequate policies or practices regarding the timing of rest periods. Defendants also did not have adequate policies or practices to verify whether Plaintiff and the Class were taking their required rest periods. Further, Defendants did not maintain accurate records of employee work periods, and therefore Defendants cannot demonstrate that Plaintiff and the Class took rest periods during the middle of each work period. For example, Defendants required Plaintiff and the Class to prioritize time-sensitive work tasks over taking rest periods, resulting in interrupted, late, short, or missed rest periods. Accordingly, Defendants' policy and practice was to not authorize and permit Plaintiff and the Class to take rest periods in compliance with California law." (Exh. A (Complaint) ¶ 19.)

29. Based on the allegations in the Complaint, a 20% violation rate is supported, resulting in one missed meal period as well as one missed rest period per week. *See Burgos v. Citibank, N.A.*, *supra* at **10-11 (approving a 20% violation rate where the complaint alleged violations occurring "from time to time" as well as violations resulting from company "policy and procedure," "uniform practice," and "pattern and practice").

30. There are approximately 70,703 workweeks in the putative class period for just the putative class members employed by Defendant Boehringer Ingelheim Fremont, Inc. through June 30, 2025. (Jordan Decl. ¶ 9.) Twenty percent (20%) of 70,703 is 14,140. Based on the assumption

that there was one rest period and one meal period premium owed per workweek and using the average rate of pay of the putative class, $39.69 per hour, the potential meal and rest period damages are conservatively **$1,122,433.20.**  (2 hours per week [1 missed meal periods + 1 missed rest periods] x $39.69 per hour x 14,140 weeks].)

### 2. Failure to Pay Wages Upon Termination

31. Under Labor Code Section 203, Plaintiff and putative class members seek waiting time penalties from the date their earned and unpaid wages were due, upon termination or resignation, until paid, up to a maximum of thirty days.  Cal. Lab. Code § 203(a).

32. Specifically, Plaintiff alleges "[t]hroughout the statutory period, Defendants willfully failed and refused to timely pay Plaintiff and the Class at the conclusion of their employment all wages for all minimum wages, overtime wages, meal period premium wages, and rest period premium wages. Further, Defendants did not pay Plaintiff and the Class their final paychecks immediately upon termination."  (Exh. A (Complaint) ¶ 21.)

33. According to Defendant Boehringer Ingelheim Fremont, Inc.'s personnel files, there are two hundred and forty-nine (249) former employees, and thus, these 249 former employees may be entitled to damages should Plaintiff succeed in certifying the putative class and prevailing at trial. (Jordan Decl., ¶ 10.)

34. Assuming a putative subclass of 249 former employees, the conservative waiting time penalty amount under Labor Code Section 203 is **$2,371,874.40** (249 putative class members x $39.69 per hour x 30 days x 8 hours).

### 3. Failure to Provide Accurate Wage Statements

35. Under Labor Code Section 226, Plaintiff and putative class members seek penalties for Defendants' "knowing" failure to provide itemized accurate wage statements. Cal. Lab. Code §§226(a), (e).

36. Specifically, Plaintiff alleges that "[t]hroughout the statutory period, Defendants failed to furnish Plaintiff and the Class with accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned (including correct hours worked, correct wages earned for hours worked, correct overtime hours worked, correct wages for meal periods

that were not provided in accordance with California law, correct wages for rest periods that were not authorized and permitted to take in accordance with California law, and Defendant's address." (Exh. A (Complaint) ¶ 22.)

37. According to Defendant Boehringer Ingelheim Fremont, Inc.'s personnel files four hundred and fifty-eight (458) current and former employees worked 12,298 pay periods in the one year prior to the filing of the Complaint. (Jordan Decl., ¶ 12.) Assuming 458 "first" or $50 violations and 11,840 "subsequent" or $100 violations, the total Section 226 penalties owed is $**1,206,900** ((458 x $50) + (11,840 x $100)).

### 4. Failure to Pay Overtime Claim

38. Cal. Lab. Code § 510 provides that employees in California shall not be employed more than eight (8) hours per workday and more than forty (40) hours per workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

39. Plaintiff alleges, "[t]hroughout the statutory period, Plaintiff and the Class worked more than 8 hours in a workday and more than 40 hours in a workweek. Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including all overtime wages. In those instances where Plaintiff and the Class earned non-discretionary bonuses and other remuneration, Defendants failed to incorporate all remuneration when calculating the correct overtime rate of pay, meal break premium rate of pay, rest break premium rate of pay, and sick day rate of pay. Also [SIC] throughout the statutory period, Plaintiff and the Class were required to work "off-the-clock" and uncompensated. For example, despite requiring Plaintiff and the Class to perform urgent work duties after clocking out of their scheduled shifts, Defendants refused to allow Plaintiff and the Class to record this time worked and failed to compensate them. Despite being required to perform these work tasks, Plaintiff and the Class were not compensated for this time worked." (Exh. A (Complaint) ¶ 17.)

///
///
///
///

40. Northern District Courts have held that a reasonable percentage for purposes of determining minimum wage and overtime violations is 25%. *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-cv-09955, 2022 U.S. Dist. LEXIS 74811, 2022 WL 1210402, at *4 (N.D. Cal. Apr. 25, 2022) (accepting a 25 percent violation rate in a case where the complaint alleged a "pattern and practice" of violations); *Brown v. Janus of Santa Cruz*, No. 21-cv-00094, 2021 U.S. Dist. LEXIS 147197, 2021 WL 3413349, at *6 (N.D. Cal. Aug. 5, 2021) (accepting a 25 percent violation rate)

41. If we assume one hour of unpaid overtime per week for 25% the workweeks for Defendant Boehringer Ingelheim Fremont, Inc.'s employees in the putative class period, the potential damages are **$1,052,325.78** ($39.69 base hourly rate * 1.5 overtime multiplier * 25% of 70,703).

### 5. Other Claims, Attorneys Fees

42. In addition to these claims, Plaintiff seeks damages on behalf of himself and the putative class for: (1) failure to pay minimum wages (Exh. A (Complaint) ¶¶ 4, 32-41); (2) failure to reimburse employees for required expenses (*Id.* at ¶¶ 4, 59-62); and (3) unlawful business practices (*Id.* at ¶¶ 78-96). These potential damages and/or penalties significantly increase the amount in controversy.

43. Finally, Plaintiff seeks his attorneys' fees and costs. (Exh. A (Complaint) at Prayer for Relief.) Although Defendants deny Plaintiff's claim for attorneys' fees, for purposes of removal, the Ninth Circuit uses a benchmark rate of twenty-five percent of the potential damages as the amount of attorneys' fees. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015) (noting that federal courts have consistently approved of attorney fee awards over the 25% benchmark, specifically at a rate of 30% or higher); *In re Quintus Sec. Litig.*, 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund).

44. Accordingly, the following is the minimum amount in controversy based on the allegations alleged by Plaintiff:

| CLAIM | AMOUNT IN CONTROVERSY |
|---|---|
| Meal & Rest Break Premium Claim | **$1,122,433.20** |
| Failure to Pay Wages When Due Claim | **$2,371,874.40** |
| Failure to Provide Accurate Wage Statements Claim | **$1,206,900.00** |
| Failure to Pay Overtime Claim | **$1,052,325.78** |
| SUBTOTAL | ($5,753,533.38) |
| Attorneys' Fees @ 25% | **$1,438,383.35** |
| **TOTAL** | **$7,191,916.73** |

45.  Based on the foregoing analysis of five of Plaintiff's eight claims, all requirements for CAFA removal are more than satisfied here.

**VI.  SUPPLEMENTAL JURISDICTION.**

46.  To the extent any of Plaintiff's claims are not removable under CAFA, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a), because they are part of the same common nucleus of operative facts over which this Court has original jurisdiction.

**VII.  VENUE.**

47.  "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

48.  This action was filed in the Superior Court in and for the County of Alameda.  Thus, venue of this action properly lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 84(a) and 1441(a).

**VIII.  CONSENT.**

49.  All Defendants consent to the removal of this action

///

///

///

## IX. CONCLUSION.

50. Based on the foregoing, Defendants request that this action be removed to this Court. If any question arises as to the propriety of removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of its argument that removal is proper.

Dated: June 30, 2025                                JACKSON LEWIS P.C.

By: _____
Shannon B. Nakabayashi
Isabella L. Shin
Attorneys for Defendants
BOEHRINGER INGELHEIM FREMONT, INC., BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., and BOEHRINGER INGELHEIM ANIMAL HEALTH USA INC.